UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

      JAMES SAFFORD AND            Case No. 19-30059
      KRISTINE SAFFORD,            Chapter 13 Proceeding
          Debtors.               Hon. Daniel S. Opperman
_____/

DOUGLAS MILLER and
JULIE MILLER,

        Plaintiffs,

v.                                  Adv. Proc. No. 19-3023

JAMES SAFFORD,

        Defendant.
_____/

OPINION GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Introduction

     Before the Court is Plaintiff Douglas and Julie Miller's Motion for Summary Judgment against James Safford.  Plaintiff filed this action under 11 U.S.C. §§ 523(a)(2), (a)(4) and 523(a)(6) objecting to the dischargeability of debt.  The instant Motion for Summary Judgment is brought pursuant to Section 523(a)(4) only.  For the reasons stated in this Opinion, the Court grants Plaintiffs' Motion.

Facts

     Defendant was an owner, officer, and authorized agent of Safford, Inc., d/b/a Integrity Construction & Contracting ("Integrity") at all relevant times.   Plaintiffs engaged Defendant and Integrity to build a home for them after their previous home was destroyed by fire and entered into a contract with Integrity on August 16, 2017.  Plaintiffs assert that the residential building

1

licenses of Integrity and Defendant had expired prior to entering into this contract or on May 31, 2018. The contract price agreed to was $275,000, with 5 draws of $55,000 conditioned upon the completion of certain stages in the construction process. Disputes arose regarding the timing and completion of certain stages and Integrity ultimately abandoned the project after receiving funds under the contract. Prior to and after abandoning the project, Defendant and Integrity failed to pay subcontractors and suppliers, ultimately resulting in Plaintiffs being left to make the majority of the payments. These amounts total $44,033.65, and for excavation subcontractors, and additional $22,026.99 was not paid.

Plaintiffs filed an action in state court asserting violations of the Michigan Building Contract Fund Act ("MBCFA" or "Act"), as well as violations of the Michigan Occupational Code. During discovery in the state court case, Defendant confirmed that Integrity failed to pay its laborers and subcontractors at least $23,088.06. There are disputes concerning the final amounts not accounted for, but the state court proceeding discovery process revealed that "at the very least, Defendant had failed to account for $44,781.98 of Plaintiff's funds." During the state court proceeding, Defendant failed to produce a complete accounting of funds received from Plaintiffs or provide evidence of any payment provided to its subcontractors on this project.

Defendant filed his petition seeking Chapter 7 relief with this Court before Plaintiffs could file their motion for default judgment in state court. Accordingly, they filed an adversary proceeding in this Court and submitted discovery requests to Defendant, which Defendant did not fully answer. After Plaintiffs filed a motion to compel discovery responses, this Court allowed Defendant additional time to respond, which he did in part. Given this partial response after ample opportunity to supply discovery responses, this Court entered an Order on April 28, 2020 sanctioning Defendant for failing to comply with discovery. This Order "prohibited"

2

Defendant "from introducing evidence regarding the discovery responses, records, documents, issues, categories or information referenced in the Court's February 18, 2020 Order Compelling Discovery Responses." This Order also precluded Defendant from "introducing evidence, relating to the use of, or accounting for the construction trust funds paid by Plaintiffs to Defendant and/or the Company."

Plaintiffs originally assert that the current amount owed by Integrity and Defendant to Plaintiffs is $319,878.98, which is $134,345.94 (three times the $44,781.98, as treble damages for conversion of trust funds is claimed), plus $185,533.04, representing Plaintiffs' delay damages, cost to complete, amounts paid directly by Plaintiffs to Defendant's subcontractors, and amounts still owing to these subcontractors. Plaintiffs assert summary judgment is appropriate because these facts are undisputed, attaching the relevant documents to support such along with the Affidavit of Plaintiff Douglas Miller, and that under applicable Michigan law, this debt is nondischargeable under Section 523(a)(4).

Defendant denies that his actions amount to defalcation and violations of the MBCFA, and that the delays were due to flooding that occurred during the construction process that were not the fault of Defendant or Integrity. Defendant does not attach any further accounting to support his position (and the April 28, 2020 Sanctions Order would preclude them from doing so).

The Court heard oral arguments on July 22, 2021 and questioned Plaintiffs' calculation of damages. To clarify these calculations, the Court allowed the parties an opportunity to supplement their briefs. Each party did so, and the Court has reviewed these helpful pleadings.

Plaintiffs' supplements clarify Plaintiffs' damages under the MBCFA by detailing the $55,000 deposited by Plaintiffs with Defendant and Integrity and the accounting of $10,218.02

by Defendant, leaving $44,781.98 as unaccounted funds. This amount, when trebled, is $134,345.94.

Next, Plaintiffs detailed each cost and unpaid invoice caused by Defendant's defalcation, which Plaintiffs argue is also included as a separate item of damages. In particular, Plaintiffs report the following damages:

| | | |
|---|---|---|
| 1. Unpaid Invoices to be Paid by Plaintiffs | $ 22,026.99 | |
| 2. Invoices Paid by Plaintiffs | 44,033.65 | |
| 3. Delay Costs | 30,938.40 | |
| 4. Net Cost to Complete Work | 88,534.00 | |
| Total | $185,533.04 | |

All of these damage items are supported by affidavits and exhibits and are carefully catalogued in Plaintiffs' original brief and well summarized in Plaintiffs' supplemental pleadings.

Plaintiffs also explain and account for the proper calculation of damages in regard to treble damages as allowed by the MBCFA and *Cohen v. De La Cruz*, 523 U.S. 213 (1998). Their table of calculations is:

| | |
|---|---|
| MBCFA and Conversion Damages | $134,345.94 |
| Damages Incurred as a Result of Defalcations | 185,533.04 |
| Less Amount Defalcated | (44,781.98) |
| Total Damage Request | $275,097.00 |

In his supplement, Defendant argues that numerous man hours were incurred by Defendant as detailed in Defendant's affidavit, filed with his response to Plaintiffs' Motion and well after the deadline set by the Court. Also, Defendant claims Plaintiffs are "double dipping" on their damage calculations, that certain damage calculations are wrong, and that the $275,097 requested by Plaintiffs is more than the original contract between the parties.

After careful review of the pleadings, the Court finds that the record is complete for purposes of this Opinion.

4

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of certain debts).

## Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 46 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The burden then shifts to the nonmoving party once the moving party has met is burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp. 1223, 1227 (E.D. Mich. 1991).

## Standard for Non-Dischargeability Under § 523(a)(4)

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ." The Sixth Circuit has held that § 523(a)(4) requires:

> (1) a fiduciary relationship
> > (a) in the form of an express trust or
> > (b) technical trust relationship;
> (2) breach of that fiduciary relationship; and

5

(3) a resulting loss.

*R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178-79 (6th Cir. 1997); *see also Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963 (6th Cir. 2009); *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251-52 (6th Cir. 1982) (finding that fiduciary capacity "applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity" and "the requisite trust relationship must exist prior to the act creating the debt and without reference to it") (citations omitted).

To establish the existence of an express trust, the plaintiff "must demonstrate: (1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *Patel*, 565 F.3d at 968 (internal quotation marks and citation omitted).

Once the plaintiff has established the existence of a trust and that the defendant is a trustee of a trust, the burden of proof shifts to the defendant. In *Cappella v. Little (In re Little)*, 163 B.R. 497 (Bankr. E.D. Mich. 1994), the Court found that the question of burden of proof for defalcation while acting in a fiduciary capacity was a substantive question, and thus should be determined under state law. *Id.* at 502. In reviewing Michigan law, the *Cappella* Court found that:

> Michigan courts have repeatedly stated in various contexts that a trustee must account to the beneficiaries for the disposition of trust funds. . . . Failure to properly so account is, by definition, a defalcation.
>
> It has been stated that the beneficiary has the initial burden of proving the existence of a fiduciary duty and the trustee's failure to perform it . . . [T]he burden then shifts to the trustee . . . to prove it acted with . . . good faith . . . and made full disclosure of all facts related to the transactions at issue. . . . [T]he mere failure to account establishes a loss.
>
> Since trustees have a duty to account under Michigan law, it is only logical that the Debtor, a statutory trustee, must prove that no defalcation occurred – i.e., that he be

required to account for the trust funds he received. . . . [T]he Michigan Supreme Court has stated that where a trustee is called upon in a court of equity to account for the funds received by him as trustee, . . . the duty rests upon him to so account, and the burden of proof is upon him to establish the correctness of the account.

*Id.* at 500-01 (internal quotation marks and citations omitted).

The Sixth Circuit Court of Appeals has held that defalcation for purposes of § 523(a)(4) "occurs through the misappropriation or failure to properly account for those trust funds" by a fiduciary. *Garver*, 116 F.3d at 180 (citation omitted). It requires a "pre-existing fiduciary relationship." *Patel*, 565 F.3d at 968.

In *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013), the Supreme Court decided the level of intent required for defalcation under § 523(a)(4):

[W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. . . . Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. That risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation.

*Id.* at 273-74 (internal quotation marks and citation omitted).

The Sixth Circuit has addressed the MBCFA in the context of a § 523(a)(4) non-dischargeability proceeding.[1] "[T]he MBTFA satisfie[s] the necessary requirement that the trust exist separate from the act of wrongdoing as a matter of federal law . . . ." *Patel*, 565 F.3d at 968 (internal quotation marks and citation omitted). Thus "contractors" under the Act "are fiduciaries to their subcontractors under § 523(a)(4)." *Id.; see also Johnson*, 691 F.2d at 252.

---

[1] The MBCFA was also known as the Michigan Builders Trust Fund Act ("MBTFA"). For ease, the Court will refer to the MBCFA and the MBTFA as the "Act" for purposes of this Opinion.

The *Johnson* court concluded that

> [t]he Building Contract Fund Act satisfies the express or technical trust requirements of section [523(a)(4)]. The trust relationship is unambiguously imposed on a contractor or subcontractor by the language of the statute. The trust res is clearly defined as the monies paid by any person into the building contract fund. The trustee is charged with specific affirmative duties, including paying out trust funds in accordance with the statutorily imposed priority scheme, not using funds for its own purposes so long as trust beneficiaries, laborers, subcontractors and materialmen remain unpaid . . . The fiduciary relationship . . . arises at the time any monies are paid to the contractor or subcontractor whether or not there are any beneficiaries of the trust at that time and continues until all of the trust beneficiaries have been paid.

*Id.* at 252-53.

Therefore, the first element of § 523(a)(4), a fiduciary relationship, is met for funds held under the Act. *See also Patel*, 565 F.3d at 963 (finding an individual debtor who was an officer, 50% shareholder and day-to-day administrator of affairs of a company hired to act as general contractor was himself a "contractor" subject to liability under the Act).

After the plaintiff establishes a breach of the fiduciary duty, "the plaintiff must demonstrate a loss resulting from the breach." *Sangal v. Strickfaden (In re Strickfaden)*, No. 09-CV-15060, 2010 WL 3583427, at *4 (E.D. Mich. Sept. 9, 2010) (noting there is no defalcation if the funds were spent completing the project or toward contract-related bills). Supplying materials on open account is not sufficient to establish a res required under § 523(a)(4); however, supplying materials for a specific project does create the required trust under the Act. *Astro Building Supplies, Inc. v. Slavik*, No. 10-2206, 2011 WL 6157348, at *1 (6th Cir. Dec. 12, 2011).

In *Patel*, the Sixth Circuit Court of Appeals discussed intent in the context of the Act. As "carefully explained" in its previous holding in *Johnson*:

> defalcation occurs when evidence supports "the objective fact that monies paid into the building contract fund were used for purposes other than to pay laborers, subcontractors or materialmen first is sufficient to constitute a defalcation under section [524](a)(4) so long as the use was not the result of mere negligence or a

8

mistake of fact." Thus, there is no such thing as "defalcation per se" and instead the debtor must have been objectively reckless in failing to properly account for or allocate funds.

*Id.* at 970 (quoting *Johnson*, 691 F.2d at 257). "[T]his Circuit has never countenanced 'innocent' or merely 'negligent' defalcation" as being sufficient to find a debt non-dischargeable under § 523(a)(4)." *Id.* The *Patel* Court went on to find that the debtor recklessly misallocated funds, citing his testimony that he paid his own expenses, including his wages, before paying the plaintiff; the debtor's "woefully inadequate" attempts at accounting; and the debtor's concession "that his business operations were sloppy at best . . . ." *Id.* at 971. Proving the elements of a case under the Act, alone, is not sufficient under *Bullock* to entitle a creditor to relief under Section 523(a)(4); rather, the requisite finding of the state of mind of "moral turpitude or intentional wrong" is required. *See Shears v. Vestal (In re Vestal)*, 521 B.R. 604, 610-12 (Bankr. W.D. Mich. 2014) (holding that the burden of proof shifts to the creditor challenging dischargeability to demonstrate that the debtor intentionally or recklessly acted when violating the Act).

<u>Analysis</u>

Here, there are no genuine issues of fact as to the essential elements of this Section 523(a)(4) action. The facts of this case are disputed by Defendant, but nothing is offered to support such bare denials and excuses. Defendant is now precluded from offering any further proofs under the April 28, 2020 Sanctions Order. Contrasted with the facts as supported by the exhibits attached to Plaintiffs' Motion for Summary Judgment, Defendant has not sufficiently shown the existence of a genuine issue of fact warranting denial of this summary judgment motion. The requisite fiduciary relationship exists because, under *Patel,* there is no dispute that Defendant and his company, Integrity, were a "contractor" for purposes of the Act and thus a

9

fiduciary to Plaintiffs. And there is no dispute that Plaintiffs expended funds to Integrity for the home construction. The breach of fiduciary duty occurred when Defendant's company failed to remit payment in full to its subcontractors and suppliers, causing Plaintiffs to expend funds to do so. Even if Defendant's assertions of the flooding and then not being allowed to continue completion of the project are true, this is not a defense to Defendant, who chose to not pay the subcontractors and suppliers and did not account for same.

Accordingly, Defendant has not adequately accounted for the funds and this failure satisfies the intent element. Thus, the Court finds that Plaintiffs, as the moving parties, have met their burden of showing the absence of a genuine issue of material fact under Section 523(a)(4), and that Defendant has failed to meet his burden of showing the existence of a genuine issue of material fact.

As to the amount of damages incurred by Plaintiffs, the Court accepts and adopts Plaintiffs' calculations with a few minor adjustments. First, the Court is satisfied that the $44,781.98 reduction properly addresses Defendant's "double dipping" concerns and readjusts the amount of damages properly. In particular, the $44,781.95 reduction is in an amount greater than the $44,033.65 invoices actually paid by Plaintiffs, so this adjustment slightly favors Defendant, if any party. Next, in analyzing Defendant's claim of man hours and other amounts incurred by Defendant, these items are not proven and not allowed by Michigan law. *Patel*, 565 F.3d at 971. Moreover, the late submission of this information, well beyond the April 28, 2020 Sanctions Order, prohibits Defendant from offering this information and the Court from considering it. Defendant had ample opportunity to produce this information and did not do so until it was too late. As for the delay costs and net cost to complete work damages, these expenses were incurred because Defendant's defalcation and subsequent decision to abandon the

project. While not as direct as the $44,781.95 of unaccounted funds, these expenses are sufficiently related as required by *Cohen v. De La Cruz*, 523 U.S. 213 (1998) in that each arises out of the defalcation and subsequent acts of Defendant.

Defendant finally notes the $275,079 exceeds the original contract amount, but cites no authority for a limitation of damages to the contract amount. Instead, the Act, which allows treble damages, allows an award that could be in excess of the contract amount, so Michigan law does not have a limitation as Defendant might hope.

After careful consideration, the Court reduces Plaintiffs' damages for the rental of a storage unit. Plaintiffs reported they rented this unit for five months at $125 per month, which equals $625, not the $660 requested by Plaintiffs. The Court awards $625, and reduces their damages by $35, resulting in a total award of $275,062 because the Court finds the remainder of Plaintiffs' damages accurate and proper items of damages. The Court is satisfied that this amount is proper and is a proper reduction of the $319,878.98 originally requested by Plaintiffs.

Conclusion

Plaintiffs' Motion for Summary Judgment is GRANTED because no fact issues exist as to whether Defendant's actions amounted to defalcation while acting in a fiduciary capacity, resulting in the damages to Plaintiffs as just stated. Pursuant to Section 523(a)(4), this warrants a finding of nondischargeability.

Counsel for the Plaintiffs is directed to prepare an order consistent with this Opinion and entry of order procedures of this Court.

**Signed on November 23, 2021**



/s/ **Daniel S. Opperman**

**Daniel S. Opperman**
**United States Bankruptcy Judge**